BAKER, JUDGE:
Claimant, Mrs. Deloris Shrader, brought this action as the administratrix of the estate of her daughter, Angela Shrader, who died in an accident on December 23, 1989, in Mercer County. Claimant alleges that respondent, Division of Highways, failed to maintain the guardrail along Bull Tail Hollow Road, also known as W.Va. Secondary Route 25/31, nearBluefield, West Virginia. Claimant contends that the guardrail erected was inadequate for-the purpose for which it was erected, and, as a result of the failure of the guardrail to serve its purpose, Ms. Shrader lost her life. Claimant further contends that the road in question may have been exceedingly icy at the time of the accident which was a contributing factor although there were other factors involved. Damages are alleged to be in excess of the recovery received by claimant from automobile insurance which was $200,000.00.
Respondent contends that the guardrail was maintained properly and the sole cause of the accident was the improper driving on the part of the operator of the vehicle on December 23, 1989. Further, respondent had no notice that there was any problem with the guardrail and/or the road. Respondent contends that the weather conditions on this particular night were very cold, and respondent had attempted to keep the road clear of snow and ice.
The evidence adduced at the hearing of this claim on May 19 and 20, 1994, established that Angela Shrader along with her friend, Lisa Hardy, had decided to leave her home at approximately 2:30 a.m. to 3:00 a.m. on December 23, 1989, unbeknownst to her parents and without their permission. The girls were spending the night together as is the custom for many fifteen year olds. They had received a telephone call from a boy who had invited them to go to a party. It was an extremely cold evening. They crawled out of a window at the Shrader residence and j oined several boys in a 1980 Jeep C J5. At this time there were six boys in the Jeep and they proceeded to a woman's home for the party. Upon leaving the party, Angela and Lisa got back into the Jeep with four of the boys and they drove around the Bluefield area. George Michael Harvey was driving the Jeep. It was a bitter cold night with a temperature of approximately 23 degrees below zero on a Fahrenheit scale. Mr. Harvey drove the Jeep on Bu" Tail Ho"ow Road to an area airport where Robert Whittaker then took over the driving *4 responsibilities. The testimony of Lisa Hardy is that he was driving too fast and his manner of driving scared her. Mr. Harvey testified to the contrary as to both his manner of driving on this evening and that of Mr. Whittaker, but he did not remember many circumstances about the accident with any clarity. In any event, as Mr. Whittaker drove back on Bull Tail Hollow Road, he apparently lost control of the Jeep. It rolled over, leaving the paved surface of the road, and into a reservoir adjacent to the road . The reservoir was covered with ice, but the Jeep broke through the ice, landing on its tires in the water, lisa Hardy and the four boys waded to shore, but they were unable to find Angela Shrader. She was found several hours later in the water where she evidently got trapped under the ice and drowned as a result of this tragic accident.
On the night of the accident, the guardrail posts adjacent to Bull Tail Hollow Road were pushed over and the cables were torn loose from the posts. According to Deputy Gills, the guardrail was about eight feet from the edge of the roadway. The Jeep was in the water approximately 30 feet from the road surface, but it was 67 feet from where the it left the roadway when the accident started. It was his opinion that the Jeep was being driven in a reckless manner and too fast for the roadway conditions at the time of the accident. Deputy Charles Smothers who was also at the accident scene testified that there were no tire marks leading from the guardrail to or on the surface of the ice. It was his opinion that the Jeep was in the air and landed on the ice covering the reservoir where it submerged.
According to the investigating officer, Deputy Michael Gills of the Mercer County Sheriffs Office, the driver of the Jeep did not have an operator's license and the Jeep had been stolen by the boys prior to the time they picked up Lisa Hardy and Angela Shrader. The record does not reveal who actually stole the Jeep. Neither of the girls knew that the Jeep was a stolen vehicle. Mr. Whittaker was charged in this accident and he pleaded guilty to reckless driving and operating a vehicle without an operator's license. He served a sentence in the Mercer County Jail based upon the guilty plea.
The guardrail system in place on Bull Tail Hollow Road on December 23, 1989, was a post and cable system. The system consisted of wooden posts (generally locust posts) with two steel cables running through the posts. Although this is an old system for guardrails, it is still prevalent in West Virginia. It has been replaced by the W-beam or steel guardrails when new guardrails are installed or old guardrails are replaced. The reservoir was constructed in the 1960's and the post and cable guardrail system was put in place at that time. The accident caused damage to three to four joints of the system and these were replaced with steel beam guardrails which is the customary procedure. Inspections of guardrails in Mercer County were made visually from the road by respondent's employees. There had not been any complaints made to respondent's employees in Mercer County about the guardrails on Bull Tail Hollow Road. Charles Raymond Lewis, II, a planning research engineer for respondent in the traffic engineering division, testified that from his observations of the photographs of the accident scene, the wooden post came out of the ground rather than breaking and the wood did not appear to be rotten.
Stephen Chewning, an expert in traffic safety, testified that he was able to observe the guardrails which had been in place along Bull Tail Hollow Road from photographs taken some two weeks after the accident. He visited the accident scene in 1992 and observed the new guardrail system. His testimony as to the wooden post and cable system in place on the night of the accident was based upon pure conjecture as he had only the benefit of photographs without actual observations of the guardrail. He was of the opinion that the Jeep should have been deflected and decelerated on down the *5 guardrail. It should not have gone into the lake if the guardrail was functioning properly. Thus, the guardrail, in his opinion, was a contributing cause of the accident. He stated that factoring in the inexperience of the driver, the icy roads, the overloading of the Jeep, "after all that had occurred, if the guardrail had been sufficient, there still may have been a crash in the guardrail, the vehicle may have spun back out into the road, but the vehicle would not have gone through the guardrail and into the lake...."
The law in the State of West Virginia has been adhered to by this Court consistently and that is that respondent may held liable for defective conditions on its roads only where it has been established that the respondent knew or should have known of the defective condition and had a reasonable time in which to take corrective action. This principle as enunciated by the West Virginia Supreme Court of Appeals is that the State is neither an insurer nor guarantor of the safety of persons traveling on its highways. Adkins v. Sims, 130 W Va. 645, 46 S.E.2d 81 (1947). For the respondent to be held, liable" for damage caused by a defect in the road, it must have had either actual or constructive notice of the defect and a reasonable time to take corrective action. Chapman v. Division of Highways, 16 Ct.CI. 103 (1986). Although the instant claim is a case of first impression for the Court, the principle established extends to the maintenance of guardrails, and, thus, is applicable.
After having carefully reviewed the testimony, post trial briefs, closing arguments, and photographic exhibits in this claim, the Court is of the opinion that respondent was not negligent in its maintenance of the wooden post and cable guardrail system adjacent to Bull Tail Hollow Road at the scene of this accident. The testimony and description of the accident scene by Deputy Smothers substantiates the fact that the Jeep may have been airborne from the edge of the road to the reservoir where it landed. In that instance the condition of the guardrail would be a moot issue. The Court also is of the opinion that there were many circumstances surrounding this accident which would have made a recovery by the claimant difficult. Claimant's decedent and Lisa Hardy must be held to be responsible for their own actions. Although the Court is not unmindful of the tragedy which has occurred to the claimant as the mother of the decedent, the Court must base its decisions upon the facts and the law as it relates to each claim.
Accordingly, the Court is of the opinion to and does deny this claim.
Claim disallowed.